# Supreme Court of Texas

---

No. 22-0940

---

Texas Tech University Health Sciences Center–El Paso,

*Petitioner*,

v.

Loretta K. Flores,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

---

**Argued September 11, 2024**

JUSTICE LEHRMANN delivered the opinion of the Court.

JUSTICE BLACKLOCK filed a concurring opinion, in which Justice Young joined.

JUSTICE YOUNG filed a concurring opinion.

In this case, we consider whether a state university's immunity from suit has been waived with respect to an employee's age-discrimination claim. The employee applied to be the university president's chief of staff, and a significantly younger candidate was chosen for the position. The employee alleges she was not selected

because of her age, in violation of Chapter 21 of the Texas Labor Code, while the university maintains the president simply hired the more qualified candidate. The question presented is whether a genuine issue of material fact exists as to whether the university's stated reasons for not giving the employee the chief-of-staff position were a mere pretext for discrimination. The university contends that the employee adduced no evidence of pretext and that Chapter 21 therefore does not waive the university's immunity from suit. We agree and hold that the court of appeals erred in affirming the trial court's denial of the university's plea to the jurisdiction with respect to the employee's age-discrimination claim. Accordingly, we reverse the court of appeals' judgment as to that claim and render judgment dismissing the case.

## I. Background

This is Loretta Flores's second age-discrimination suit against her employer, Texas Tech University Health Sciences Center–El Paso. We begin with an abbreviated account of the facts underlying the first suit, which provide important context and are described in more detail in our opinion in *Texas Tech University Health Sciences Center–El Paso v. Flores*, 612 S.W.3d 299 (Tex. 2020) (*Flores I*).

### A. *Flores I*

Flores has worked for the University since 1993. Until 2013, the University operated as a regional campus of the Texas Tech University School of Medicine. At that time, Flores served as director in charge of operations in the office of the regional dean, Dr. Jose Manuel de la Rosa. The school transitioned to a separate university within the Texas Tech

2

University System, to be led by a president rather than a regional dean. Initially, Flores continued in her director position and supported both the interim president and Dr. de la Rosa.

The University hired Dr. Richard Lange as its first president in July 2014 and subsequently appointed Dr. de la Rosa as the University's provost and vice president of academic affairs. President Lange restructured the president's office to eliminate the director position and create an "assistant to the president" position that would involve more clerical, administrative duties. In March 2015, President Lange appointed Vanessa Solis, who had worked in the dean's office since 2010, to the assistant position. He informed Flores that she would be reassigned to the provost's office to continue working with Dr. de la Rosa. Based on her job duties after the transition, in August 2015 Flores was reclassified as an "executive associate," a position that commanded a lower salary than she had been receiving as director.[1] She was fifty-nine years old.

Flores filed a charge of discrimination with the Equal Employment Opportunity Commission. In August 2016, she sued the University for age discrimination under Chapter 21 of the Labor Code,[2]

---

[1] Before her reassignment, Flores received a substantial raise in recognition of her service as director during the transition. *Flores I*, 612 S.W.3d at 303. Her new executive-associate salary, the maximum available for that position, was higher than her pre-raise salary as director but lower than her salary immediately before her reclassification. *Id*. at 303–04.

[2] Chapter 21's predecessor was enacted as the "Commission on Human Rights Act," in reference to the administering state agency. Commission on Human Rights Act, 68th Leg., 1st C.S., ch. 7, § 1.01, 1983 Tex. Gen. Laws 37,

alleging that she was "replaced" as director by the younger Solis, who was in her mid-thirties. *Id.* at 303–04. The trial court denied the University's plea to the jurisdiction, and the court of appeals affirmed. *Id.* at 304. We reversed and dismissed the case, holding that "a reasonable juror could not conclude that Solis took or was placed in Flores's former position as director in the president's office." *Id.* at 308. Rather, "the evidence establishe[d] only that President Lange restructured and reorganized the president's office, resulting in the elimination of Flores's director position and the creation of a new and different assistant-to-the-president position." *Id.* at 310. Further, Flores presented no evidence that she was treated less favorably than younger, similarly situated employees. *Id.* at 312.

## B. *Flores II*

Meanwhile, in July 2016—almost a year after Flores submitted her EEOC complaint and shortly before she filed suit in *Flores I*—President Lange created a new "chief of staff" position in the president's office. The "essential functions" of the new position included:

- oversee presidential initiatives and special projects as directed by the president;
- serve as a liaison for the president to a variety of internal and external constituencies;

---

37. In 2003, the Legislature transferred the powers and duties of the Commission on Human Rights to the Texas Workforce Commission. Act of June 1, 2003, 78th Leg., R.S., ch. 302, § 1, 2003 Tex. Gen. Laws 1279, 1279. Nevertheless, courts, including this Court, have sometimes continued to refer to Chapter 21 as the Texas Commission on Human Rights Act, or TCHRA. We now refer simply to Chapter 21.

4

- gather, investigate, research, analyze, and study information affecting University-wide, intradepartmental, or interdepartmental operations;

- advise the president on issues related to University policy, process, and practice;

- handle questions, concerns, and requests on behalf of the president to solve problems and mediate disputes;

- oversee the president's office scholarships and administer their budgets;

- develop sustainability plans for scholarship funds;

- administer budget for special projects and onetime financial commitments of the president's funds;

- report on financial viability of commitments; and

- mentor the administrative staff in the president's office.

The position's "required qualifications" included a graduate degree and ten years of experience "in positions of increasing management responsibility in complex organizations."

Before the position was officially posted, President Lange learned that Amy Sanchez, the director of the University's office of auditing services, was considering leaving the University to pursue other opportunities. President Lange informed Sanchez about the upcoming position and encouraged her to apply.

Flores, Sanchez, and five external candidates applied for the chief-of-staff position.[3] President Lange interviewed only Flores and

---

[3] The job posting for the position stated that it was a "confidential posting," but President Lange testified he did not know what that meant and he had not been involved in generating the document other than to forward the

Sanchez. At the time, he was aware of Flores's EEOC complaint regarding her reassignment and knew her age. Nevertheless, during Flores's interview, he asked her how old she was. According to President Lange, the question was a rhetorical one intended to address the "elephant in the room"—Flores's EEOC complaint. Flores did not answer the question.

After interviewing Flores and Sanchez, President Lange hired Sanchez for the position. At the time, Flores was sixty years old, and Sanchez was thirty-seven. Flores submitted a second charge of discrimination to the EEOC and, after being issued a right-to-sue letter, filed her second lawsuit against the University under Chapter 21. Flores alleges that the failure to select her for the chief-of-staff position constitutes both age discrimination and retaliation for her earlier complaints about her reassignment.

As in *Flores I*, the University filed a plea to the jurisdiction, which the trial court denied. The court of appeals reversed in part and dismissed the retaliation claim, 657 S.W.3d 502, 517–18 (Tex. App.—El Paso 2022), and Flores does not challenge that portion of the court of appeals' judgment here. The court of appeals affirmed as to the discrimination claim, holding that Flores raised a genuine issue of material fact as to whether age was a motivating factor in the University's decision not to select her for the chief-of-staff position. *Id.* at 512–15. We granted the University's petition for review.

---

job description and requirements to the human-resources department. In any event, given that five external candidates applied for the position, we ascribe no significance to the "confidential posting" designation.

## II. Discussion

As a state university, the University is immune from suit absent an express legislative waiver. *Flores I*, 612 S.W.3d at 305. Chapter 21 waives that immunity, "but only if the plaintiff alleges facts that would establish that the state agency violated the Act and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation." *Id.* (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018)). In evaluating the University's jurisdictional plea, we assume the evidence supporting the plaintiff's allegations is true, resolving all doubts and indulging reasonable inferences in the plaintiff's favor. *Id.* However, "we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Alamo Heights*, 544 S.W.3d at 771.

### A. Legal Framework

Under Chapter 21 of the Labor Code, an employer may not discriminate against an individual "because of" certain characteristics, including age. TEX. LAB. CODE § 21.051(1). An employment practice is unlawful "if discrimination 'was a motivating factor for [the] practice, even if other factors also motivated the practice.'" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479–80 (Tex. 2001) (quoting TEX. LAB. CODE § 21.125(a)).

Before a case is tried on the merits, and in the absence of direct evidence of discrimination, we use the *McDonnell Douglas* burden-shifting framework to evaluate whether a plaintiff has created a fact issue on her statutory claim. *Wal-Mart Stores, Inc. v. Canchola*,

121 S.W.3d 735, 739 (Tex. 2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).[4]  Under that framework, (1) the plaintiff must create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext. *Flores I*, 612 S.W.3d at 305.  As we held in *Alamo Heights*, because a statutory violation is necessary to establish an immunity waiver—such that jurisdiction and the merits intertwine—all three steps of the framework "are relevant to the jurisdictional inquiry."  544 S.W.3d at 783–84.

### B. Prima Facie Case

A prima facie case requires evidence that the employee:

(1) was a member of the protected class (that is, 40 years of age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.

*Flores I*, 612 S.W.3d at 305.  In *Flores I*, we held that Flores failed to create a fact issue with respect to her prima facie case because a

---

[4] Because Texas's anti-discrimination statutes are analogous to their federal counterparts, the "federal statutes and the cases interpreting them guide our reading of [Chapter 21]." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012).  Federal authorities interpreting Title VII "do not bind us," but they do "assist us in our independent obligation to construe Texas law." *Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Niehay*, 671 S.W.3d 929, 937 (Tex. 2023).

reasonable juror could not conclude that she was "replaced" by Solis or treated less favorably than others who were "similarly situated" to Flores but outside the protected class. *Id.* at 310, 312. Here, the University does not dispute the existence of a prima facie case: Flores is over forty years of age and thus a member of a protected class; she was qualified for the chief-of-staff position; she was not hired for the position; and the person who was hired—Sanchez—is significantly younger.

### C. Legitimate, Nondiscriminatory Reason

The parties also do not dispute that the University articulated legitimate, nondiscriminatory reasons for its action, rebutting the presumption established by the prima facie case. In support of its plea to the jurisdiction, the University attached an affidavit from President Lange attesting that he selected Sanchez for the chief-of-staff position because she "was simply the better qualified candidate—mostly because of her auditing and accounting background and skillset, and broad range of experience." More specifically, President Lange attested that he considered Sanchez's experience as director of the office of auditing services, which "gave her familiarity with each of [the University's] various departments," to be "extremely valuable to the position" and that Flores did not have a comparable auditing and accounting background. He also testified in his deposition that Sanchez had "more experience" in "the areas that I was most interested in," specifically, "[b]usiness, audit, [and] grants." Relatedly, President Lange attested that he asked Flores during her interview "whether she had any experience with auditing, accounting, or budgeting—skill sets that were important to the Chief of Staff position. Ms. Flores responded that she

9

did not have any significant experience in these areas." Finally, President Lange averred that "based on my observations and experiences during the period in which Ms. Flores supported me before her reclassification [to executive associate], I also lacked confidence in certain of her competencies, such as grant management, auditing, budgeting, and her ability to follow instructions and receive constructive feedback."

In light of these stated reasons, we turn to the third "pretext" step of the analysis. Here, the parties part ways in their evaluation of the evidence.

## D. Pretext

At this third step, we examine whether Flores presented evidence, sufficient to create a genuine issue of material fact, that the University's stated reasons for its employment action were a pretext for discrimination. *See Alamo Heights*, 544 S.W.3d at 782. The United States Supreme Court has held that evidence that would allow the factfinder to disbelieve the employer's stated reason, in conjunction with the requisite prima facie case established at step one, "may permit" an inference "that the employer is dissembling to cover up a discriminatory purpose" even in the absence of additional, independent evidence of such discriminatory intent. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 149 (2000). Citing *Reeves*, we have similarly noted that in a pretext case, a "plaintiff can *usually* provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false." *Quantum Chem.*, 47 S.W.3d at 476

10

(emphasis added).[5] However, the *Reeves* Court recognized that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." 530 U.S. at 148.[6] The parties dispute whether this case presents such an instance. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (holding that the case presented "one of those instances" where a prima facie case and evidence that the defendant's explanation was false were insufficient to create a fact issue on whether the explanation was a pretext for discrimination).

The University argues that Flores presented no evidence that the University's stated reasons for its employment action were false and, even if she did, the evidence nevertheless does not support an inference of discriminatory intent. We agree with the University that the evidence

---

[5] In *Canchola*, we explained that when conducting an evidentiary review of a jury's verdict in a discrimination case that has been fully tried on its merits, the *McDonnell Douglas* burden-shifting analysis does not apply; instead, the question is whether the evidence supports the jury's "ultimate finding" that discrimination was a "motivating factor" in the adverse employment action. *Canchola*, 121 S.W.3d at 739. At that stage, evidence of the falsity of an employer's stated reasons does not equate to evidence that the real reason was unlawful discrimination. *Id.* at 740 ("The relevant inquiry is not whether the [employer's stated reasons] were a pretext, but what they were a pretext *for*.").

[6] "For instance," the Court noted, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

11

does not permit a reasonable conclusion that the proffered justification for selecting Sanchez over Flores was false, let alone discriminatory.

As an initial matter, it is undisputed that both Sanchez and Flores met the "required qualifications" for the chief-of-staff position. They each have a graduate degree—Sanchez received an MBA in 2007, and Flores received an MBA in 2013. Further, both have the requisite ten years of experience "in positions of increasing management responsibility in complex organizations." Sanchez worked her way from a staff auditor at a school district, to assistant director of the University of Texas at El Paso's office of auditing and consulting services, to director of the University's office of auditing services. She is also a certified public accountant and a certified internal auditor. Flores began her career at the University as an administrative secretary and then a coordinator (a more senior secretarial position for one of the departments) before being promoted to executive associate to the regional dean and then director of that office before her reclassification as an executive associate in the provost's office.

Flores first argues that her strong record of performance in the director position, which involved many of the same duties as the chief-of-staff position, belies the University's claim that President Lange believed Sanchez to be the better-qualified candidate.[7] Indeed, Dr. de

---

[7] As an alternative to showing pretext by evidence that the employer's proffered explanation is false, the Fifth Circuit has held that the plaintiff may also show pretext via evidence that she "is 'clearly better qualified' than the person selected for the position." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 412 (5th Cir. 2007) (quoting *Celestine v. Petroleos de Venezuella*

la Rosa submitted a recommendation letter on Flores's behalf attesting to a "perfect alignment between her prior experience and [the chief-of-staff] position."[8]  We disagree with this narrow account of the candidates' qualifications.

There is no question that Flores had significant relevant experience from her time as director of the regional dean's office before and during the University's transition—e.g., managing various special projects, assisting the dean with strategic planning, and serving as the dean's "problem solver" and liaison to other departments and agencies—and had received consistently positive evaluations from Dr. de la Rosa over the years.  However, there is also no question that Sanchez had more accounting and finance experience and that, as director of the University's office of auditing services, she had in-depth institutional knowledge and experience across all departments following the school's transition to a four-year university.  Relatedly, President Lange testified in his deposition that Flores had "an experience poorly managing grants" with respect to the student-run free clinic, resulting in the removal of that responsibility.  Flores confirmed that in April 2015, her responsibility for the clinic's budgeting had been removed due to

*SA*, 266 F.3d 343, 357 (5th Cir. 2001)).  Flores does not contend in this Court that she is "clearly better qualified" than Sanchez; rather, she asserts that the reason given by the University for the decision to hire Sanchez over Flores—President Lange's conclusion that *Sanchez* was the better-qualified candidate—is unworthy of credence.

[8] In his deposition in *Flores I*, however, Dr. de la Rosa testified that when President Lange began his tenure and they discussed the transition, Dr. de la Rosa said that he did not think Flores and President Lange "would make a good fit."

13

concerns about proper fund management.  This incident occurred while she was working with President Lange and before she had made any discrimination complaints.[9]

Certainly, then, both candidates had their strengths, and we will not lightly second-guess the manner in which President Lange weighed those qualifications.  *See Martinez v. Tex. Workforce Comm'n*, 775 F.3d 685, 688 (5th Cir. 2014) (stating that "employers are generally free to weigh the qualifications of prospective employees, so long as they are not motivated by [discrimination]" (emphasis removed)).  The court of appeals, however, concluded that the evidence calls President Lange's credibility into question because "the areas of business, audits, grants, and finances [that President Lange claimed were most relevant to his decision] were not listed to any degree on the job description [he created] for the chief of staff position."  657 S.W.3d at 515.  Flores similarly asserts that President Lange relied on "subjective and previously unmentioned hiring criteria" in asserting that Sanchez was the better candidate.  *See Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 322 (5th Cir. 2015) (stating that such reliance "could help support a rational jury's finding of pretext"); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010) ("An employer's reliance on a previously unmentioned job requirement to justify a challenged hiring decision

---

[9] The testimony of both President Lange and Flores regarding this incident, which Flores stated was documented in an email, controverts the court of appeals' assertion that "[t]here is no contemporaneous documentation of any problems with or concerns over Flores' work or her competencies" until after she complained of age discrimination.  657 S.W.3d at 514–15.

14

would raise a genuine issue of material fact as to pretext."). But the record simply does not support that assertion.

As discussed, the job description for the chief-of-staff position included, among other things:

- "[o]versee the president's office scholarships and administer their budgets";

- "develop sustainability plans for scholarship funds";

- "[a]dminister budget for special projects and onetime financial commitments of the president's funds"; and

- "[r]eport on financial viability of commitments."

Flores and the court of appeals gloss over these duties, which correspond directly with Sanchez's finance and accounting experience, and instead appear to focus on the fact that the specific words "accounting," "audit," and "grants" were not used. That fact is at most a technicality. In taking such a narrow and unsupported view of the position to which Sanchez and Flores applied, the court of appeals created a fact issue where none exists.

Next, the parties dispute the ramifications of the evidence that President Lange encouraged Sanchez to apply for the chief-of-staff position before it was posted. Flores argues that the fact that he "sought out the younger Sanchez rather than Flores for the position . . . despite its similarity to her former duties" undercuts President Lange's claim that he hired Sanchez because of her qualifications. The University responds that if, as Flores claims, President Lange "preselected" Sanchez for the position before Flores even applied, then he cannot be accused of discriminating against Flores. *Cf. Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387–88 (2d Cir. 2000) (holding that no

15

evidence called into question the employer's legitimate, nondiscriminatory reason for selecting a qualified younger employee for a position rather than the plaintiff—that it had created the position specifically for that employee to prevent her from being laid off).

Both parties stretch the evidence to support their respective inferences, neither of which is reasonable. As noted, all the evidence shows is that President Lange encouraged Sanchez to apply for the chief-of-staff position upon learning that she was considering leaving the University to pursue other opportunities. It indicates neither that he "preselected" her nor that he sought her out over other potential candidates. We fail to see how this evidence has any bearing on whether President Lange's stated reason for hiring Sanchez—that she was more qualified for the position—was a pretext for discrimination against Flores.

Finally, Flores argues that President Lange's inquiry regarding her age during her interview is some evidence of pretext.[10] Again, we disagree. Certainly, age-related comments by the relevant decisionmaker *can* be evidence supporting a finding of pretext. *See Goudeau v. Nat'l Oilwell Varco, LP*, 793 F.3d 470, 477 (5th Cir. 2015) (holding that doubts the plaintiff raised about the validity of performance warnings he was given, "combined with the ageist comments that [we]re potentially corroborated by the firing of both [the

---

[10] Flores does not assert that this inquiry constitutes "direct evidence" of discrimination. Rather, she offers it as additional circumstantial evidence pertinent to the *McDonnell Douglas* pretext analysis. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

plaintiff] and [another older employee], would allow a jury to conclude that age was the reason for the termination"). But as with any other evidence, the inquiry regarding Flores's age must be considered in context. *See Alamo Heights*, 544 S.W.3d at 774.

Flores and President Lange agree that he asked Flores how old she was, that he then told her she did not have to answer the question, and that she in fact did not answer. As noted, President Lange testified that he already knew Flores's age and that the question was a rhetorical one intended to address the "elephant in the room."[11] That "elephant" was the fact that, at the time of the interview, Flores had already submitted a claim of discrimination to the EEOC premised on her reassignment and reclassification to executive associate.[12] President Lange recalled telling Flores in connection with the question that he did not care about her age and that her age "did not matter." Flores disputes that he made those statements, but she conceded in her deposition that there "[c]ould have been" some context to the question that she does not remember.

In the context of the ongoing dispute in which age was an issue, President Lange's reference to age does not call into question the

---

[11] Flores argues that a factfinder could disregard President Lange's "self-serving statement" that he already knew Flores's age. The statement may be self-serving, but we see no basis to disregard it given President Lange's involvement in the events underlying *Flores I*. Indeed, when Flores was asked at her deposition whether she thought President Lange knew her age before the interview, she responded, "I'm sure he had an idea."

[12] As noted, Flores filed suit in *Flores I* based on that earlier complaint shortly after President Lange hired Sanchez as his chief of staff.

reasons given by the University for hiring Sanchez over Flores. An acknowledgment of Flores's pending discrimination complaint—the subject of *Flores I*—is not an admission of discrimination by President Lange or the University, nor does it remotely undercut President Lange's position that Sanchez was more qualified to be his chief of staff.

In sum, reviewing the record as a whole, we conclude that Flores failed to present evidence that would allow a reasonable factfinder to disbelieve the University's stated reasons for selecting Sanchez as the president's chief of staff. In turn, we hold that Flores has failed to present evidence from which a reasonable juror could conclude that age was a motivating factor behind that decision.

### III. Conclusion

The University is immune from suit absent some evidence that it violated Chapter 21. Because Flores presented no such evidence, the University's plea to the jurisdiction should have been granted. Accordingly, we reverse the court of appeals' judgment as to the discrimination claim and render judgment dismissing the case for lack of jurisdiction.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** December 31, 2024

18